**Hale W. MILLER**

v.

**Sal LENTINE.**

Supreme Judicial Court of Maine.

Argued May 8, 1985.

Decided July 22, 1985.

Strout, Payson, Pellicani, Cloutier, Hokkanen, Strong & Levine, Esther R. Barnhart (orally), Robert J. Levine, Rockland, for plaintiff.

Collins, Crandall, Hanscom & Pease, P.A., Willard D. Pease (orally), Rockland, for defendant.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, VIOLETTE, WATHEN and SCOLNIK, JJ.

NICHOLS, Justice.

In this case involving allegations of breach of an express warranty, 11 M.R. S.A. § 2–313 (Supp.1984–85), and mutual mistake in the contract of sale between the Plaintiff, Hale W. Miller, and the Defendant, Sal Lentine, of an outboard motor, the Plaintiff appeals the Superior Court's (Knox County) denial of his appeal. The Plaintiff argues that the District Court erred in the following respects: (1) in concluding that the Defendant's representations were merely "puffing;" (2) in concluding that the contract entered into was not based on mutual mistake; and (3) in finding certain facts concerning the discovery and cause of defects in the motor.

We disagree and affirm the judgment.

In the Spring of 1983, the Plaintiff, who was in the market for an outboard motor, noticed a used 1980 235 horsepower outboard motor on display in the shop of Coastal Diversified Marine in Owls Head. He inquired of Albert Hallowell in the shop as to the owner and price of the motor and learned that it was owned by the Defendant, who was then in New Jersey, was offered for $3,500.00, and was in good condition with only 30–35 running hours on it, but had been involved in an accident when the boat to which the motor was attached fell off a trailer. The Plaintiff spoke by telephone with the Defendant and was told in addition to the information he had already received that the motor had a broken skeg—a lower part designed to protect the propeller if an object is struck—, was in "perfect running condition," and should not cause him any trouble.

The Plaintiff paid a deposit of $350.00 to the Defendant and subsequently sent the balance of $3,150.00 on or about March 21, 1983. There was no written agreement between the parties. Upon the Plaintiff's request, Hallowell installed a new propeller on the motor. Hallowell tested the motor and noted no problems. The Plaintiff took delivery of the motor on May 8, 1983 and launched his boat with the motor on it that same day. The Defendant testified that at that time he noted a problem with its idling. It was not, however, until sometime thereafter that the Plaintiff asked Hallowell to make adjustments. The Plaintiff had not sought an opportunity to operate it prior to purchase. About one month after purchase, the Plaintiff had difficulty with the motor and brought it to Hallowell for repairs in the first week of June. Hallowell fixed the motor after "digging deeper and deeper" and splitting the power head open to find the crankshaft defective from rust. He found the rest of the motor in excellent condition. The Plaintiff paid $1,457.90 for the repairs. Later other problems, including a misalignment of the drive shaft, a burned out voltage regulator, and a wrong size gas tank, were discovered.

Turning to the Plaintiff's contention that the District Court erred in concluding that there was no express warranty[1]

---

1. 11 M.R.S.A. § 2–313 (Supp.1984–85), in pertinent part, provides the following:
   (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.
   (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

   . . . . .

   (2) It is not necessary to the creation of an express warranty that the seller use formal words such as "warrant" or "guarantee" or that he have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty.

breached, we first note that the question whether particular language gives rise to an express warranty is generally one for the trier of fact. *Cuthbertson v. Clark Equipment Co.*, 448 A.2d 315, 320 (Me. 1982) (citation omitted). Thus, we review the District Court's finding for clear error. *See Auto Sales & Finance Co. v. Seavey*, 401 A.2d 648, 650 (Me.1979).

The term "puffing" is frequently used to denote "dealer's talk," "sales talk," and "praise of goods by the seller." *See* 77 C.J.S. *Sales* § 310 (1952 & Supp.1984); Annot., 94 A.L.R.3d 729 (1979); 8 *Williston on Contracts* § 971A at 493 (3d Ed.1964). Very often it is difficult to distinguish puffing statements from affirmations of fact relating to goods. *See id.; Downie v. Abex Corp.*, 741 F.2d 1235, 1240 (10th Cir.1984); J. White & R. Summers, *Uniform Commercial Code* 329 (1980). In the instant case, the District Court found that the Defendant told the Plaintiff, prior to the latter's purchase, that the motor in question was in "perfect running condition" and that the Plaintiff should have no problem with it. The question then became whether those statements created an express warranty or merely disclosed the seller's opinion. *See* 11 M.R.S.A. § 2–313(2).

■ Courts in other jurisdictions are divided on the issue of whether language similar to "perfect running condition" and "should not give you any trouble" creates an express warranty.[2] The circumstances surrounding the agreement, including the knowledge of both parties, should be considered in determining whether an express warranty was formed. *See Peterson v. North American Plant Breeders*, 218 Neb. 258, 354 N.W.2d 625, 630 (1984). Given the

District Court's finding that during a telephone conversation with the Plaintiff the Defendant described certain damage to the motor, we cannot now say that that court committed clear error in concluding that the Defendant's other statements as to the condition of the motor constituted nothing more than "sales talk."

■ Nor do we conclude that the District Court committed clear error in finding no mutual mistake. *See DiBiase v. Universal Design & Builders, Inc.*, 473 A.2d 875, 878 (Me.1984); *Interstate Industrial Uniform Rental Service, Inc. v. Couri Pontiac, Inc.*, 355 A.2d 913, 917 (Me.1976). A mistake of fact is found in situations where the parties to the contract hold a conception of the facts that differs from reality. *Id.; Blue Rock Industries v. Raymond International, Inc.*, 325 A.2d 66 (Me.1974). In cases where the mistake is mutual, creating a contract that does not express the intent of the parties, courts may order rescission of the contract. *Couri Pontiac*, 355 A.2d at 918. A mutual mistake of fact concerns the circumstances as they existed at the time the contract was formed and not subsequent developments. *See Restatement (Second) of Contracts* § 151 at 383 (1981); *Williston, supra* § 1543 at 74–75; *Cleveland-Cliffs Iron Co. v. Chicago & North Western Transportation Co.*, 581 F.Supp. 1144 (W.D.Mich. 1984). Here, the court found: (1) Hallowell tested the motor when he installed a new propeller; (2) it functioned well at that time with the exception of the voltage regulator; and (3) problems with the motor did not arise until after the Plaintiff used the motor for a period of time. Those findings,

---

2. **Creating an express warranty:** *Taylor v. Alfama*, 145 Vt. 4, 481 A.2d 1059, 1060 (1984) (car in "mint condition"); *Pake v. Byrd*, 55 N.C.App. 551, 286 S.E.2d 588 (1982) ("good tractor" and "it operated as good as when it was new"); *Jones v. Kellner*, 5 Ohio App.3d 242, 451 N.E.2d 548 (App.1982) (car "mechanically A–1); *Ekizian v. Capurro*, 111 Misc.2d 372, 444 N.Y.S.2d 361 (1981) (engine "runs good"); *Valley Datsun v. Martinez*, 578 S.W.2d 485 (Tex.Civ.App.1979) (camper in "excellent condition").

**Not creating an express warranty:** *Chase Resorts, Inc. v. Johns-Manville Corp.*, 476 F.Supp. 633 (E.D.Mo.1979) (watering system "would provide years of trouble-free service"); *Sessa v. Riegle*, 427 F.Supp. 760 (E.D.Pa.1977) (racehorse "sound"); *Performance-Motors, Inc. v. Allen*, 280 N.C. 385, 186 S.E.2d 161 (1972) (trailer in "perfect condition").

combined with the Plaintiff's own testimony that he merely "believed it would run," reveal no clear error in the ruling that there was no mutual mistake. The motor did *run* at the time of purchase, notwithstanding the fact that it later proved not to be in perfect running condition.

Finally, we find no merit in the Plaintiff's argument that the District Court erred in making certain findings of fact concerning the use and condition of the motor. The presiding judge was entitled to disbelieve segments of the Plaintiff's testimony if he found that they were not credible. *Qualey v. Fulton*, 422 A.2d 773, 775–76 (Me.1980). Upon our review of the record, the court's findings specifically objected to by the Plaintiff are not clearly erroneous.

The entry is:

Judgment affirmed.

All concurring.